# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7579 | **DATE** | 6/2/2000 |
| **CASE TITLE** | EARL FITZGERALD vs. FISCHER IMAGING CORPORATION | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court grants in part and denies in part FIC's motion to strike [18-1], denies its motion for sanctions [28-1] and denies its motion for summary judgment [7-1]. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 5 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EARL FITZGERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Ronald A. Guzman |
| vs. | ) | |
| | ) | 98 C 7579 |
| FISCHER IMAGING CORPORATION, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

DOCKETED
JUN 0 5 2000

## MEMORANDUM OPINION AND ORDER

Earl Fitzgerald has sued Fischer Imaging Corp. ("FIC") for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("section 1981") when it allegedly terminated his employment based on race. FIC has moved for summary judgment and has moved to strike plaintiff's responses to its motion and for sanctions pursuant to Fed. R. Civ. P. 11. For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part FIC's motion to strike, denies its motion for sanctions, and denies its motion for summary judgment.

### Motion to Strike

FIC has moved to strike Fitzgerald's responses to the summary judgment motion based on three grounds: (1) Fitzgerald's responses were untimely; (2) he failed to file a supporting memorandum of law; and (3) Fitzgerald's Response to Defendant's Rule 12(M) Statement of Material Facts improperly references the Illinois Department of Human Rights proceedings and contains numerous assertions that are unsupported by

affidavits, parts of the record, or other supporting materials. The Court addresses each argument in turn.

First, the Court rejects FIC's argument that it should strike plaintiff's responses merely because they were filed three business days late and received by FIC four business days after the filing date. Although the proper procedure would have been for Fitzgerald to file a motion to file its responses instanter and provide notice of motion pursuant to LR 5.3, his failure to do so has not prejudiced FIC in this case because FIC merely filed its reply brief late with a motion to file it instanter, a motion which was granted. Thus, the Court declines to strike plaintiff's response on the basis of plaintiff's untimely filing of its response submissions.

Second, while the Court acknowledges that the Seventh Circuit generally has affirmed the district court's strict enforcement of Local Rule 12,[1] it has stated that it is within the district court's discretion "[w]hether to apply such a rule strictly or to overlook any transgression." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Thus, it was within the Court's discretion to allow plaintiff to amend his responses when it did so in the Minute Order of 11/10/99. Accordingly, the Court will not strike plaintiff's responses in their entirety based on the inadequacies therein. The Court agrees, however, that portions of Fitzgerald's responses contain assertions that are unsupported by affidavits, parts of the record, or other supporting materials. Because FIC has not pointed to any specific examples of nonconformance, the Court need not discuss in detail each and every statement of fact in Fitzgerald's responses that is deficient.

---

[1]Local General Rule 12(M) and 12(N) have been retitled LR 56.1(a) and LR 56.1(b). In this Memorandum Opinion and Order, however, the Court will use the old numbering system because that is how the parties, for the most part, refer to their submissions.

Instead, the Court will discuss any deficiency at the point where a particular statement of fact becomes pertinent. Likewise, as is the Court's practice, the Court will address any deficiencies in FIC's Local Rule 12 submissions if and when such statements become vital to its analysis. Thus, to the extent the Court finds certain of Fitzgerald's statements unsupported as required by Rule 12, the motion to strike Fitzgerald's responses is granted in part and denied in part.

Third, FIC argues that the Court should strike all references to the Illinois Department of Human Rights Investigation Report ("Report"). Fitzgerald relies on the Report to support the statement of fact that co-worker Roger Shevokas was suspended from work for more than a month because he made a serious mistake in operating one of the machines that resulted in a significant over-run of the machine and caused damage to the machine. (*See* Pl.'s Suppl. Response, Add'l Facts That Require Denial Summ. J. "12(N)(3)(b)" ¶ B.5.) As appropriate support of this statement, however, plaintiff also cites the affidavit of co-worker Richard Brown. (*Id.*, Ex. I, Brown Aff. ¶ 11.) So, whether or not the citation to the Report is stricken, the statement which it supports will still remain as part of the record. Accordingly, to the extent that striking this citation to the Report is rendered moot, the Court denies FIC's motion to strike.

In addition, Fitzgerald references the Report with regard to the production of Shevokas' training record. (Pl.'s 12(N) ¶ III.B.3.) Fitzgerald, however, does not cite to the Report as support for this statement of fact. Instead, he cites to the actual personnel records produced by FIC. (*See id.*) Therefore, to the extent Fitzgerald references the Report's findings in this context, the Court grants FIC's motion to strike, disregards such references, and looks solely to the records to support the remaining portion of the

statement. In sum, for the above reasons, the Court grants in part and denies in part FIC's motion to strike Fitzgerald's responses.

## Motion for Sanctions

FIC has moved for sanctions pursuant to Fed. R. Civ. P. 11 based on the following conduct of Fitzgerald's counsel, Jerome Kurtenbach: his (1) untimely filing of plaintiff's responses; (2) failure to cite portions of the record to support some of the statements of fact in plaintiff's responses; and (3) initiation of this lawsuit without conducting an investigation into the factual or legal basis for plaintiff's claims. The Seventh Circuit has stated that the proper inquiry under Rule 11 is "whether the party or his counsel 'should have known that his position is groundless.'" *District No. 8, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Clearing*, 807 F.2d 618, 622 (7th Cir. 1986) (quoting *Coleman v. CIR*, 791 F.2d 68, 71 (7th Cir. 1986)). It is clear that the underlying theory upon which Fitzgerald's claims are based, *i.e.*, that Fitzgerald was discriminated against on account of his race, is well grounded in existing law. Nor is it entirely devoid of factual support in the record. Further, there is no merit to an argument that either the Complaint or plaintiff's response to the motion for summary judgment was filed solely in order to harass FIC. Therefore, the Court denies FIC's motion for sanctions.

Although Kurtenbach's initial filing of a late brief and an insufficient memorandum of law does not constitute sanctionable conduct under Rule 11, it does constitute sloppy lawyering. The Court warns plaintiff's counsel that in the future, he should timely file memoranda and strictly adhere to the requirements of Local General Rule 12, now entitled General Local Rule LR 56.1, or risk dismissal of a client's case.

## Facts[2]

In February 1981, FIC hired Fitzgerald, who is black, to work in its Fabrication Department ("department"). (Def.'s Local General Rule 12(M) Stmt. of Uncontested Material Facts ("Defs.' 12(M)") ¶ 1.) A decrease in business caused FIC to layoff nine positions in the department. (*Id.* ¶ 2.)

On November 22, 1996, FIC laid off Fitzgerald. (*Id.* ¶ 1.) FIC did not layoff Roger Shevokas, Chung Yi, and Nam Van Tran, who are not black, on that date. (Pl.'s 12(N) Supp. Resp. Def.'s Stmt. of Material Facts ("Pl.'s 12(N)") ¶ I.3.[3]) At the time of the layoff, Shevokas, Yi, and Tran had less seniority than Fitzgerald. (Pl.'s 12(N) ¶ I.4.) Fitzgerald held a Machinist III position, Yi held a Machinist III position, and Shevokas and Tran held Machinist II positions. (*Id.* ¶¶ 1.6-7.) Within days of the layoff of Fitzgerald, Shevokas was promoted to Machinist III. (*Id.* ¶ 8.)

At the time of the layoff, William Deegan was the manager of the department. (Defs.' 12(M) ¶ 9.) When asked whether he conferred with others in making the decision to layoff certain employees, Deegan answered, "Well, no. The decision pretty much came down to my decision. I did discuss with the group leaders, you know, Mr. Pintar,

---

[2]The following facts are either undisputed or deemed admitted because the party's response did not refute the other party's statement of fact and/or was unsupported by a citation to the record as required by the Local General Rule ("Local Rule") 12(M) and 12(N). Statements of fact that were not properly supported have not been considered.

[3]The portion of the record on which FIC relies to support its denial of this statement of fact does not refute the facts stated therein, and therefore this statement of fact is deemed admitted. (*See* Def.'s Supp. Response ¶ I.3, Deegan Stmt. at 3-4.)

Mr. Mesich at the time, Mr. Hawwat." (Pl.'s 12(N) ¶ II.2[4]; Def. Ex. B. at 17.) According

to Deegan, the following retention criteria were used:

> I essentially took a look at what was left and where I could get the biggest bang
> for the buck, so to speak. And I needed people that were multi-flexible that could
> run various machines and were willing to do things as opposed to somebody who
> was self-serving who could only run a saw or only run a drill or could only run a
> mill. I was looking for somebody that, if necessary, we could move around. And
> that was the basis of the way we looked at it. We looked at seniority. We looked
> at fitness, skill and ability.

(*Compare* Pl.'s 12(N) ¶ III.B.9 *with* Def.'s Supp. Resp. ¶ III.B.9.)

On December 9, 1996, Fitzgerald filed a charge of discrimination on the basis of

race with the Illinois Department of Human Rights and the Equal Opportunity

Commission ("EEOC"). (Def.'s Ex. E.) On August 24, 1998, the EEOC issued a right to

sue letter regarding Fitzgerald's charge. (*Id.*) On November 24, 1998, Fitzgerald filed

the Complaint in the instant suit alleging discrimination based on race in violation of

Title VII as well as section 1981.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) allows the Court to grant summary

judgment "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

"This standard is applied with added rigor in employment discrimination cases, where

intent and credibility are crucial issues." *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159,

---

[4]Because FIC failed to cite any specific reference to an affidavit or part of the record in support of
its denial of this statement, this statement of fact is deemed admitted. (*See* Def.'s Supp. Response ¶ II.2.)

1162 (7th Cir. 1994). In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999).

"While section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). "A plaintiff bringing suit under section 1981 or Title VII can meet his burden of proof for establishing intentional discrimination either through direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985), or through the indirect, burden-shifting method of proof first elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Id.*

Fitzgerald has proffered direct proof of discriminatory intent. Direct proof is evidence that "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Randle v. LaSalle Telecomm., Inc.*, 876 F.2d 563, 569 (7th Cir. 1989). "In order to constitute direct evidence of discrimination, a statement must relate to the motivation of the decisionmaker responsible for the contested decision." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996). Further, such evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randall*, 876 F.2d at 569.

Deegan stated under oath that Yi "possessed the typical capability of the oriental of mass [sic] skills which set him apart. He had an innate ability to read a blueprint and

7

utilize math where Mr. Fitzgerald did not have that ability." (Pl.'s 12(N) ¶ II.1.[5])

Although FIC argues that such remarks do not constitute direct evidence of discrimination, the Court disagrees. Deegan's statements, if believed by the trier of fact, proves that he considers race when assessing the particular skills of an employee. Indeed, to some extent at least, his statement is direct evidence of a predisposition based on race in his evaluative process itself. Based on the record before the Court, it does not appear that Deegan's statement was just a stray remark unrelated to his decision to terminate Fitzgerald and retain Yi. Further, Deegan admitted in his sworn statement: "The decision pretty much came down to my decision. I did discuss with the group leaders, you know, Mr. Pintar, Mr. Mesich at the time, Mr. Hawwat." (Pl.'s 12(N) ¶ II.2[6]; Def. Ex. B. at 17.) However, besides Deegan's statement and his annual performance appraisals of Yi, the record is devoid of any statement of fact which either provides Pintar, Mesich, or Hawwat's comparison of Yi and Fitzgerald.

One of the reasons why Deegan laid off Fitzgerald is he could not program the CNC machine, although he was able to operate it. (Def.'s 12(M) ¶ 15.[7]) However, Yi, who was not laid off, did not know how to program or even operate the CNC machine. (Pl.'s 12(N) ¶ III.B.15.) Deegan also stated that "I don't know that somebody like Yi given the opportunity to get involved in it [*i.e.*, programming the CNC machine] wouldn't

---

[5]Because FIC failed to cite any specific reference to an affidavit or part of the record in support of its denial of this statement, this statement of fact is deemed admitted. (*See* Def.'s Supp. Response ¶ II.1.)

[6]Because FIC failed to cite any specific reference to an affidavit or part of the record in support of its denial of this statement, this statement of fact is deemed admitted. (*See* Def.'s Supp. Response ¶ II.2.)

[7]Because Fitzgerald failed to cite any specific reference to an affidavit or part of the record in support of his denial of this particular statement, this statement of fact is deemed admitted. (*See* Pl.'s 12(N) ¶ 15.)

have done it because he had the basic skills and he probably would have picked it up like Nam Tran has picked up." (Pl.'s 12(N) ¶ II.3.[8]) This statement, if believed by the trier of fact, proves that Deegan tends to assess an employee's capabilities based on race because Tran, like Yi, is Asian. Besides Deegan's statement regarding Tran and his annual performance reviews of Tran, the record is lacking in statements of facts relating to Pintar, Mesich, or Hawwat's comparison of Tran and Fitzgerald. In light of the fact that the Court must view the facts and draw all reasonable inferences in favor of the nonmovant, the Court finds that based on Deegan's statements, a reasonable jury could find in favor of Fitzgerald. Therefore, the Court denies FIC's motion for summary judgment.[9]

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part FIC's motion to strike, denies its motion for sanctions, and denies its motion for summary judgment.

**SO ORDERED**                    **ENTERED:** June 2, 2000

**HON. RONALD A. GUZMAN**
**United States Judge**

---

[8]Because FIC failed to cite any specific reference to an affidavit or part of the record in support of its denial of this statement, this statement of fact is deemed admitted. (*See* Def.'s Supp. Response ¶ II.3.)

[9]Fitzgerald also offers indirect proof of discrimination. However, because Fitzgerald's direct evidence precludes the entry of summary judgment on both his section 1981 and Title VII claims, the Court need not analyze the indirect, burden-shifting method of establishing intentional discrimination. This is not meant to limit, in any way, Fitzgerald's ability to present indirect proof of discrimination or rely on different theories of race discrimination at trial.

9